It's up to you. I don't care. We'll hear argument in the United States v. Hoffman. Good morning, your honors. I request five minutes for rebuttal. Granted. Thank you. I'd like to begin argument by making two corrections. First of all, at page 38 of the principal brief of appellant, we referred to Cross v. United States. The citation should, in fact, be U.S. Cross 128, Fed 3rd, 145, 3rd Circuit, 1997. And also, we referred to Judge Thomas' decision in Evans v. U.S. throughout our brief. Judge Thomas' decision is the dissenting decision and not the holding in that case. And I want to make certain that that's clear. Justice Thomas. Justice Thomas, I'm sorry. Before you begin, I have a very lengthy question to ask of you. Three of your points deal with sufficiency of the evidence. There's another point where you're talking about the agent testimony. You have filed what you call an appellant appendix. Agent Coleman's entire cross-examination is missing. Reichenbach's part of his direct is missing. Much of his cross is missing. Edmund, we're losing most of the direct. It picks up the next day. We don't know how much is lost. Cross begins at—you've dropped pages of cross and re-cross. Maraci, the whole cross-examination is out. There's no cross-examination. Key witnesses. Chunks of Schofield's cross are not in there. And you're making—and on and on it goes. And, indeed, on the Rule 29, much of the argument's not in there. How can you make a sufficiency argument when you leave out much of the testimony? Your Honor, it's my understanding that when you make a sufficiency of the evidence argument, the evidence is the direct examination of the witnesses. The cross, and that's the best for you. I don't know. I just don't know. Huge sections of the evidence here are out of the case. I think the case was severely over-tried. But there are huge portions of the evidence here that if we were making a sufficiency of the evidence, we should have seen.  Now go to your argument. Thank you, Your Honor. Mr. Hoffman has presented the argument that the evidence is not sufficient to support his conviction for mail fraud. And, of course, in that matter, the timing of the mailing is significant. And it's our position that it was not in furtherance of the conspiracy, nor was it allowing letter. Looking at the timing of the mailing, as of February 13, 2003, Reibenbach had encountered Mr. Hoffman at the EAA and attempted to complain about a decision of another hearing examiner. Mr. Hoffman took Reibenbach into a private room, wrote out a note that said, No more Walker, who was the owner of a yellow cab company. No more Mike, who was Mr. Ednott. And legit, legit, legit. Can I just back up just a bit? Sure. Is the timing, the timing of the mailing material at all? Doesn't Supreme Court case, I guess, Schmuck and U.S. v. Cross, don't they make pretty clear the timing really isn't material? Well, I think, Your Honor, it certainly isn't. If the conspiracy has ended because Mr. Hoffman has declared that there's not going to be any further wrongful activity as to the taxi cabs, what about the rest of, what about the continued ticket fixing so he can get to be a traffic court judge? Well, Your Honor, the jury did acquit Mr. Hoffman on counts one through four, which was the fixing tickets for no money and the remaining counts that were the basis of the conviction were fixing tickets for the money proposed by the traffic. So count five is only about the taxi cab scheme? Well, Your Honor, since Mr. Hoffman was acquitted on counts one through four, I think as far as the jury would have to be concerned, it would be about the taxi cab scheme. I don't understand that, but go ahead. Well, aren't there cases that say that, you know, mailing sent, even assuming, you know, your argument is correct that the scheme is terminated, aren't there cases that say that mailings made sort of in a cover-up mode to hide what went on is still part of the scheme? Your Honor, the exceptions that I found were lulling letters that would be inclined to make the victim of the offense less likely to detect the offense or less likely to report the offense. But you don't have to send the letter to the victim in the first place. Well, Your Honor, I think in this instance, nothing was accomplished by this letter that furthered the scheme. Mr. Hoffman was aware that the scheme had been discovered. In fact, the scheme was discovered from the very beginning because it was orchestrated by the FBI. Mr. Hoffman had been approached by the FBI agents. He was aware that the FBI had executed a search at Mr. Meraki's office. Mr. Meraki had informed Mr. Hoffman about the fact that the FBI had searched his office and the fact that they had a videotape. And all of that took place in the month of February. It wasn't until March the 3rd of 2003 that a letter in the mail enclosing a certified check for $4,000 was sent to Mr. Meraki. That was almost 20 days after Mr. Hoffman was told that everything had to be legit. Who do you think was the intended recipient of that letter, the intended ultimate recipient of that letter? Wouldn't it be the authorities? It may have been the authorities, Your Honor. But what the law says, I believe, is if it's a letter that is sent in furtherance of the conspiracy, it's to prevent the detection of the conspiracy or the reporting of the conspiracy. Not whether you're ultimately going to be convicted of the conspiracy. Well, to make the fraud less detectable or to continue undetected. I mean, isn't that what this letter was all about, to enable the fraud to be less detectable by making it appear as if this was just a bank loan? It's just a loan. Well, it's our position that the fraud was concluded by that point and it was not going to continue. Well, you've raised a number of other issues, and maybe you'd like to address those. Sure. We also raised the issue that the evidence was insufficient to convict on Counts 6, 7, and 8 the extortion charged in the conspiracy. In the very beginning, Mr. Reibenbach testified that in 2002 the taxi cab companies were very concerned about the parking authority taking over the regulations of taxis and medallions. While the PUC was in charge of regulating cabs, the tickets were not enforced, and if the parking authority took over, the tickets would have to be paid. Mr. Edelman confirmed this concern in his own testimony, but he was very concerned about having to pay the outstanding tickets on his cabs if the parking authority took over the regulation. After talking with Mr. Reibenbach, Edelman immediately decided to try to bribe Mr. Hoffman so that his taxi cab tickets would be fixed before the parking authority took over. So it's our position that really there is no victim in this case, that Mr. Edelman was on the lookout for someone to bribe to fix the unpaid tickets. What about the city of Philadelphia? Your Honor, I believe that... They didn't get the money to which it was entitled. But looking at the majority opinion in Evans, if there is going to be a conviction under the Hobbs Act that the victim is the person who would be extorted and not the city of Philadelphia? In any event, after introducing Mr. Meraki, Mr. Edelman was refusing to pay a certain percentage of the tickets proposed by Mr. Hoffman. So he was very much in control of this matter as opposed to being a mere victim in the offense. And Mr. Edelman also testified he had bribed numerous other public officials. It's our position that based on all of that testimony, Mr. Hoffman should have been acquitted based on an entrapment instruction. And we cited to Matthews v. U.S. that the defendant is entitled to jury instruction on entrapment when there is sufficient evidence from which a reasonable jury could find entrapment even if the defendant denies one or more elements of the crime. And we also have taken the position that the evidence was insufficient to convict because Mr. Reibenbach was charged in conspiracy to extort even though his participation was limited to introducing Mr. Hoffman and Mr. Edelman. And the introduction does not necessarily mean there was an agreement between Hoffman and Reibenbach. And so the conviction should be reversed if it could be based on an invalid legal theory. Are you going to be dealing with restitution and calculation of loss? Sure. Okay. The base offense level under 2C1.1 was 10. And there are specific offense characteristics requiring an increase of the value of the benefit received or to be received exceeds $5,000. However, application note 2 has Croc's reference to note 2B1.1 which defines losses excluding penalties. Our argument regarding... Government agrees with you on that. Okay. But let me ask you this. Whatever argument you may make on the penalties thing as to the sentence of imprisonment is harmless error, isn't it, given the sentence that was imposed? A sentence of 24 months was imposed. That equates to a loss of $30,000 to $70,000. Your Honor, even though there was a departure that I think was related primarily to Mr. Hoffman's medical condition... We don't know what it was related to. It was a huge departure. But Mr. Hoffman still has a due process right to have a sentence imposed based on material... Not to have a sentence based on materially inaccurate information. But this benefited him. It dropped his loss figure down to, well, conceivably. This is why it's harmless error in terms of imprisonment. Right? Well, Your Honor, if the judge was going to depart, even after Booker, the first step is to assess the correct guidelines in the case. Now, if in assessing the correct guidelines, you had to subtract out the penalties on the tickets, because under Note 2, you can't assess the penalties, then we should have at least started with the correct figure. How much were the penalties? What is the evidence of penalties here? I don't know, Your Honor, what the evidence of the penalties was. It wasn't developed. But it's our position that without starting at the correct offense guideline, it's not possible to say that the error was harmless, because the departure should have been from the correct guideline. Okay. Thank you. We'll get you back with rebuttal. Thank you. May it please the Court, Judy Smith for an appellee of the United States. I'd like to address first the sufficiency of evidence on the mail fraud counts. Counsel has stated that there was not sufficient evidence that the mailing in this case was in furtherance of the mail fraud scheme. The government would submit that, in fact, there was more than sufficient evidence that this mailing was in furtherance of this. The defendant, there were numerous goals of the mail fraud scheme, including the goal of fixing tickets for political reasons. And that had begun before there was any financial activity involved, and the defendant had yet to reap the final benefits of that. There is every evidence that he had continued in his quest to become a traffic court judge and to achieve his political goals. And what this mailing enabled him to do was, first of all, it was extremely close in time. It was apparent from his conversations with Meraki that he believed that he was, that the authorities had not completely caught on to everything that he was doing. That the fact that Meraki had posed as an attorney to cover up the bag man aspect of the scheme was still in play. And that if Meraki only declared that money on his taxes, that that would work out. There was a suggestion from Mr. Hoffman's secretary that if they just said it was a loan, maybe that would be okay. And that that's what, in fact, this letter was for. And that this letter was in furtherance of the mail fraud scheme. What do you do about the difference in dates? Count 5 alleges May 2002 to March 2003 was the time frame of the mail fraud. And Count 1, which there was an awful lot of argument about Count 1 at the Rule 29, alleges, and he was acquitted of Count 1, alleges the mail fraud conspiracy began in the fall of 1999 and ends in the March of 2003. You say you can take the allegations of Count 1, and because they're re-alleged in Count 5, that they're not relevant conduct, but they are the conduct of the Count 5 offense, right? Yes, Your Honor. That went over and over in the hearing. Yes, Your Honor. That's not relevant conduct. But what do you do about the dates? Are you saying that where you've got a limited mail fraud crime, substantive mail fraud count, very limited in time, nine months, something like that, but you've got a three year or more conspiracy, you can take the more than three years as direct evidence of the offense charged in Count 5? Yes, Your Honor. We believe that the evidence that was set out in those counts is the... I'm not talking the... I'm talking just the dates, because the judge kept asking this question and he never did get an answer from the government on the dates. Your Honor, in terms of what the dates are, the factual allegations of Count 1 were incorporated into Count 5, and those included... They take years and years of factual allegations, even though the count that they're coming in to support is only a nine month count. And that's not, and you said over and over, that's not relevant conduct. Your Honor, the government believes that that conduct was sufficiently incorporated into that count, and there were specific instances of conduct that were incorporated into that count. The judge never made a finding that any of this was relevant conduct for ponderance of the evidence. I suppose he could have done that, couldn't he? I believe that he could have, Your Honor. What I believe that the court was finding was that under the circumstances of the case, that the conduct, and I assume that the court is referring to the actual mail fraud conduct itself as opposed to the sentencing issue, that the actual conduct, or excuse me, that the relevant facts of the underlying offense were incorporated. What if Count 5 can't stand? Does a loss calculation need to be changed? Your Honor, the government does not believe that the loss calculation needs to be changed because the government submits that it would still be relevant conduct. However... That would have to be as to what count? Extortion? Because that's all that's left. Obviously, that would be left as to the extortion counts, Your Honor. Loss as to the extortion counts, but then... In terms of the extortion counts, Your Honor, I believe that the actual difference in terms of the estimated facts there would be fairly minuscule. In terms of the... In terms of the dollar, in terms of the sentence that was actually, if the court is referring to the sentencing, would that have to be changed? If there were a sentencing without Count 5? If we were sentencing without Count 5, that would probably... The government submits that there would not have to be a resentencing because the guidelines calculation... Here, you're talking about the court made a fairly dramatic variance in the sentencing. And the government believes that would still have been, taking all factors into account, would have still been a reasonable... The sentence the court gave would have still been a reasonable sentence. Because it would have still been well within the dollar figure that was set out. Without Count 5, would you have had that dollar figure? Yes, Your Honor. The dollar figure, in terms of the amount of tickets that were, unless I'm misremembering at the moment, we're talking about approximately $50,000 or $60,000 worth of tickets, as I recall. I'm forgetting. I'm not focused on that. I'm not going to ask any more. You've got too many arguments to address for me to ask any more on this issue. Go ahead. Your Honor, in addition, going through the other arguments in terms of the Hobbs Act conspiracy, the government submits that there was more than substantial evidence of the Hobbs Act conspiracy, that there was overwhelming evidence of the Hobbs Act conspiracy. Mr. Reidenbach was, first of all, Mr. Meraki was an unindicted co-conspirator in this case. As a result, the government had certainly proved with tapes, with documents, with testimony, that there was a Hobbs Act conspiracy, even apart from Mr. Reidenbach. However, Mr. Reidenbach was not merely a person who introduced a willing buyer to a willing seller, but was, in fact, a very active participant in the conspiracy. He's somebody who, in addition to, he negotiated separately with Mr. Hoffman to determine whether or not Mr. Meraki should be dealt with. He also, in addition to that, was having his own tickets fixed as part of this arrangement. And the government would point out that the plan was for this to expand to other tickets as well, and that Mr. Meraki, excuse me, that Mr. Reidenbach, who was involved, continued his involvement. He was not cooperating with the government at the time, even after Mr. Meraki became less active in dealing with Mr. Edmund. And for all of those reasons, the government submits that there really isn't even, there's no reason to believe that the government did not prove the conspiracy. As though counsel has argued that there is no victim in this case. In addition, of course, the mail fraud count to the city of Philadelphia, which the government was to submit, it was a victim not only of honest services fraud, which was charged with both being, it was also certainly a victim of money or property in a conventional mail fraud sense, that in a Hobbs Act case, the whole premise of a Hobbs Act case is that you have a willing victim when you are talking about under color of official right, and that's what happened here. As to the substantive Hobbs Act cases, the government submits that the defendant was, in fact, once again, there was overwhelming evidence that he participated in an attempt, but this was both an attempt and an actual case. There was substantial evidence of interstate commerce. Of course, the case law the government would submit is very clear that in cases where there is no, that when it's FBI money, that is also certainly sufficient for attempt. As to the entrapment. Can I just ask you, because I don't know how much time we have left, but I'm interested in your addressing the sentencing issue in terms of the amount of loss, both with respect to the guideline level and then the restitution. Now, apparently you agree that it was an error to include the penalties, isn't it? Your Honor, I would say in terms of having a penalty, I guess the answer to that would be yes and no. The penalties in this case, the government submits are a little bit different because they're statutory penalties that become imposed, and this is somewhat difficult than with any ordinary case. You mean the guidelines use of the term penalties doesn't include statutory penalties? No, Your Honor, I can't really take that position. I would say it's a little more unclear. What the position the government does take in this case is that the total amount in this case that was used for the loss was, in fact, a reasonable approximation, a reasonable estimate of what the loss figure was. And that's because it was clear that there were records that were missing, and Mr. Meraki had testified that he had, in fact, done at least, you know, possibly double the amount of false entries of appearance forms that he had. And under even consul's, trial consul's statement in terms of what different penalties would be, would be that the amount would be maybe 40% lower. Under those circumstances, the government submits that this was, in fact, a reasonable approximation of the loss. Well, your adversary points out that these tickets might have been dismissed by other people. You just took the entire set of dismissed tickets. How do you deal with that? Your Honor, the reason for that is that, first of all, the government had substantial testimony, for example, without getting into the minutia of this, of people being in front of fire hydrants every day. The fact is that when you do not contest your hearing legitimately and go to court, they may also have gone the other way and probably would have at the time without a hearing. And in this case, the government's position has always been there was no hearing. In many cases, there actually was no hearing. And in other cases, there was a hearing that had a foregone conclusion because those tickets were being fixed. Under those circumstances, the city is owed, the government would submit, all of that money. That's what's left on the books. Everybody has waived their chance. Well, the city is entitled to believe that if a ticket is not contested, it will be paid. Yes, Your Honor. If it's not contested, it will be paid. And this is essentially a ticket, in this case, is actually an asset of the city. What's on the books right now is the fact that the city is owed that entire amount. In terms of whether somebody actually takes an opportunity to go and contest that, that's what they didn't do in this case. I think it's disingenuous for the defendant to say, well, if they had shown up, then maybe things would have come out differently. The fact is they didn't, and the city is owed that money at this point. And one would have to argue that if one had a truly legitimate reason for not contesting their ticket, that they would have a legitimate hearing and go forth with that. The differential, and I recognize that I'm just about out of time, is when the court is considering the differential in the actual amount of the sentence that was given, the huge amount of the variance. In this case, the government submits that the court had considered, the district court had considered the 3553 factors, including the amount of the tickets, the circumstances under which those tickets were paid, and he was well aware of all of those factors, including being able to contest the tickets from the act to trial. But what about the third circuit case law? It says, well, you have to start with a correct guideline calculation. Yes, Your Honor. There is that case law, and the government has also pointed out in its brief that under Flores, that error, if there is error, can be harmless. And in this case, the guideline range was based on the figures that the government had actually submitted, which, as I said, we still believe are a good estimate. The guideline range was a 41 to 51-month sentencing. In fact, the court gave a 24-month sentencing. I would note that in Flores, I believe the guideline range had been 70 to 87 months, and the court ended up giving a 32-month sentence. So that would be harmless error as to the term of imprisonment imposed. And one could say, given the sentence that was imposed, there was a loss of between more than $30,000 and less than $70,000. That was the implicit finding, correct? I would say that I... Because the judge made no other finding as to the amount of loss. The judge made no other finding. I think what the judge made was, and the judge was certainly aware on this case, of all of the factors that the court has pointed out, including the fact that tickets could have been contested, that they could have been reduced. Yeah, but he made no finding on loss. Rather, he imposed a sentence which would be at the level of a $30,000 to $70,000 loss. Your Honor, I believe that the court made a finding that the loss was in the $230,000 range. Where did he make that finding? By adopting the factors in the pre-sentence report. I believe that was in the pre-sentence report, Your Honor, as the loss finding. I don't know about that. Because you resisted him finding any of this was relevant conduct. So he didn't have to find anything by a preponderance of the evidence. Next thing you know, there's a 21-, 24-month sentence. So, you know, harmless error because where are you really going? You've got a two-year drop and the loss figure isn't important. Where it becomes important is the restitution. Because we don't have a finding, really, that I can see of any loss figure. But meanwhile, Hoffman has to pay a restitution of a quarter of a million dollars. Your Honor, I think that when you go back that in the record, I believe that the court did base his initial finding and the pre-sentence report of 41 to 51 by adopting the pre-sentence report and that that finding was in the pre-sentence report. And I can certainly prepare a letter afterwards. That's certainly the best of my recollection. What the government would also point out, and I recognize that I'm over my time, is that restitution that fines and penalties and things of that nature can be taken into account for restitution even if they are not included in the loss figure. And the government has cited the cases that go to that in its brief. Restitution is different and those fines and penalties would be due to the state. You could get the penalties on restitution. Yes, Your Honor. But I don't think you can require a defendant to pay restitution for losses that never occurred. That's all I'm saying. As to which there's been no finding, if there was no finding. Yes, Your Honor. The government submits that there was a finding, however. Thank you. Just to be clear, the PSR, I take it the judge just added, because there's three different places in the PSR where he came up with a loss figure, to three individual categories, and that's a total of 230,913. Yes, Your Honor. At least that's certainly how we understood the court's order. Thank you. It's probably implicit from the order of restitution, too. Yes, Your Honor, I believe that it is. Thank you. Your Honor, I don't believe the figure that the government proposed of $230,913 is an approximation. They added up all of the tickets. That's what they said they did, so it's not an approximation. So there is nothing else that is out there that should be added in. Either this is the correct figure or it's not the correct figure. The pre-sentence investigation report notes total loss of $230,913. So, absent any other explicit finding, it appears that the judge made the finding of the total loss to be that amount and then made a departure for other reasons that may not have been fully articulated. Okay, so you agree there was a finding of loss?  The testimony was quite consistent that the city never would have collected all of these tickets, the face value of all of these tickets. That never would have happened. I think the average was around 40%. Is that figure in the record anyplace, the 40% I have you found it? I believe it's there, Your Honor. I could submit a letter if the court wishes. I believe several of the other examiners who appeared gave that testimony as to what the average was. The amount of extortion, I believe the ticket amount was $47,000. Mr. Etemad was attempting to compromise, and so there would be a very significant difference in the sentencing guidelines, I believe, if, in fact, the count five of the indictment does not survive. When Breimenbach was, I'm sorry, Breimenbach was not continuing to have his tickets fixed under any testimony that we have received in this matter, certainly not by Mr. Hoffman after the initial meeting between Mr. Breimenbach and Mr. Etemad and Mr. Hoffman. After that, Mr. Hoffman and Mr. Etemad continued to deal with each other. In fact, Mr. Etemad was quite emphatic that one boss deals with another boss. In fact, Breimenbach did not see Mr. Hoffman for months after the first meeting. The next appearance, encounter appears to be on the day in May when he encounters Mr. Hoffman, and Mr. Breimenbach has gotten to see another hearing examiner, not Mr. Hoffman that day, and has no agreement to have his tickets fixed by that hearing examiner. So it's our position that he was not properly named as a member of the conspiracy with Mr. Hoffman. We also argue that the district court abused its discretion by committing a non-harmless error in improperly admitting hearsay under the co-conspirator rule, specifically first turning to the conversation between Etemad and Breimenbach. If it's admitted under 801D2E, it is not hearsay. But, Your Honor, in this instance, looking at the date, the argument presented by defense counsel during the course of the trial was he wasn't a co-conspirator at that point, and therefore the tape should not have been played. The prosecution claimed it would show that Breimenbach was a co-conspirator. We say that they haven't, but in any event, I think the dates establish that he was not a co-conspirator with Mr. Hoffman at the time that the tape recording was made. And also we've argued that the conviction should be reversed on the basis of retroactive misjoinder or prejudicial spillover. Mr. Hoffman, of course, was acquitted on counts one through four, which charged that he was engaging in dishonest practices in exchange for no money when the remainder of the counts alleged that he was selling his services for money. If the trial had been limited to the extortion counts, I think Mr. Hoffman would have claimed entrapment as a matter of law, and the evidence that Mr. Hoffman did not have a predisposition to accepting money for fixing parking tickets was strong. If there aren't any other questions? No. Thank you very much. We will take the case under advisement. The clerk will adjourn the court. Thank you, Your Honor. The court stands adjourned until 11 p.m. for an advisory meeting.